## McDONALD v. PRESTON NATIONAL BANK.

1. SALE—ELECTION OF REMEDIES.

> One who takes a chattel mortgage for the purchase price of goods shipped by him, and brings a suit in chancery to protect his security and for the appointment of a receiver, and an action in *assumpsit* to recover the entire amount claimed to be due, will be held to have elected to treat the title to the property as in the debtor, and to be estopped from thereafter maintaining an equitable proceeding against the receiver based on the theory that title had not passed.

2. SAME—PRINCIPAL AND AGENT—LACHES.

> The seller cannot avoid the estoppel on the ground that the goods were shipped by an agent, and that the latter had made the election to treat the consignment as a sale while in poor health only a short time before his death, and that the theory had been maintained for several months by the principal because he had no knowledge of the terms of the transaction, where the correspondence relating thereto was under the principal's control, and the precise terms might have been promptly ascertained.

3. RECORDING LAWS—ASSIGNMENT OF ACCOUNTS.

> An assignment of open accounts as security is not within the recording laws, but is valid without recording if made *bona fide* and without intent to defraud.

4. SAME—MORTGAGES—FRAUD.

> The fact that an agreement of defeasance accompanied a warranty deed absolute in form given as security, and that the deed alone was recorded, raises no inference of fraud.

Appeal from Wayne; Carpenter, J. Submitted January 15, 1897. Decided February 18, 1897.

Bill by Charles S. McDonald, trustee, and the Meyer Rubber Company, against the Preston National Bank, Albert L. Stephens, and Clarkson M. Snedicor, to determine the construction and validity of a chattel mortgage to the defendant bank, for a marshaling of securities,

and for the appointment of a receiver. From a decree establishing the priority of the lien of the bank, complainants appeal. Affirmed.

Defendant Snedicor had, for a long time prior to 1894, been engaged in the mercantile business in the city of Detroit, and for about a year had been a borrower of money at the defendant bank. In February of that year his indebtedness to the bank was $49,500, for which security was demanded. In order to secure such indebtedness, Snedicor, on February 24th, executed a warranty deed to defendant Stephens on certain lands in the city of Detroit. The deed contained no clause to show that it was in fact a mortgage, or that Stephens held it in trust. The consideration expressed in it was $49,500. On the same day Stephens executed to Snedicor a declaration of trust, or agreement of defeasance, reciting that the deed was executed upon the condition that Snedicor should pay the bank the above sum, according to certain promissory notes and renewals thereof, and, all and singular, any other indebtedness that might thereafter be at any time due or owing to said bank. The deed was promptly recorded, but the declaration of trust was not. Snedicor was then indebted to other parties, whom he was desirous of paying, and, to enable him to do this, the bank at the same time loaned him $25,000 more, and took from him as security an assignment of his accounts then outstanding, and also those which should be afterwards acquired. This money was used for the purpose intended, and with it Mr. Snedicor paid all his other debts. These papers were drawn by the attorney for the bank, and were by Mr. Snedicor submitted to his attorney, and approved by him, before execution. Both attorneys are gentlemen of high standing in the profession. After this transaction, and before December following, Mr. Snedicor purchased largely, and among his creditors was the complainant the Meyer Rubber Company, for the sum of about $18,000. Mr. Snedicor did not prosper, and

failed to pay his notes at the bank, which, about the last of November, demanded further security.   On December 5th he executed to the bank a chattel mortgage on all his goods and accounts for $39,000.   The amounts secured by this mortgage, as expressed therein, were as follows: "$2,000 on demand, this day loaned; $15,000 this day advanced to pay two demand notes of $7,500; $10,000 due December 13, 1894; $7,500 due December 7, 1894; $4,500 due December 20, 1894."   The mortgage also included all bills, accounts, notes, and obligations at any time made or incurred or to be owing by him to the bank, and was subject to the assignment of the accounts above mentioned.   On the same day Mr. Snedicor executed to complainant McDonald, as trustee, a chattel mortgage on the same property, to secure his other creditors, including the rubber company.   Both mortgages were duly filed, the bank mortgage being first filed.   The bank took possession under its chattel mortgage, and was proceeding to foreclose.   On December 24, 1894, complainants filed their bill in chancery for three purposes:

1. To appoint a receiver.
2. To determine the construction and validity of the chattel mortgage to the bank.
3. To compel the bank, if its mortgage should be valid, to first resort to the real estate and accounts, upon which complainants had no lien.

Defendant Stephens was appointed receiver.   Under the direction of the court, the receiver proceeded, evidently with the assent of all the parties, to foreclose the real-estate mortgage, to collect the good accounts, and to sell the property and the uncollected accounts.   The amount received from the foreclosure of the real-estate mortgage was applied towards the payment of the specific notes secured thereby.   The receiver, out of the moneys received from the sale of the other property, by stipulation, paid to the bank the notes secured by its chattel mortgage.   After deducting the amounts so paid, and the receiver's allowances, there remained in his

hands, subject to the final order of the court, $5,588.49. On July 27, 1896, the complainant rubber company filed a petition against the receiver, asserting that the title to the goods which it had sold Mr. Snedicor, and which were on hand at the time of his failure, had not passed to Snedicor, but remained in it; that the value of the goods so remaining, and which came into the hands of the receiver, was about $5,000,—and praying that the receiver be required to pay to it the amount received from the sale of said goods. There is still due to the bank the sum of $12,729.50. The court found that the bank was entitled to have the balance now in the hands of the receiver paid to it, and entered a decree accordingly.

*C. E. Warner*, for complainants.

*Julian G. Dickinson* (*John D. Conely*, of counsel), for defendants.

GRANT, J. (*after stating the facts.*) 1. Is the Meyer Rubber Company entitled to the amount realized from the sale of the goods sold by it to Snedicor, which passed into the hands of the receiver, on the ground that the title to the goods unsold remained in that company? A further statement of facts is necessary, in determining this question. This company was a corporation organized under the laws of New Jersey, and doing business in New York and Chicago, its principal office being in New York. One Preston was its general agent at Chicago, and had the entire charge and control of its business there, and was authorized to sell goods. The original contract made through Preston for the sale of goods to Snedicor was dated April 2, 1894, and was the result of prior conversations and correspondence between them. By this contract the title was not reserved. A supplementary verbal agreement was made between them. On June 8th Snedicor wrote to Preston, stating that he was ready to send an order for about 2,000 cases of goods, but, before sending it, he desired that this verbal agreement should be

definitely understood, and stated his version of it. In reply, Preston wrote, stating that his interpretation was correct, and in the letter said, "Of course, the original cases will, from time to time, belong to us, or be covered finally by a final settlement, as we wrote you first." The entire amount of the goods shipped to Snedicor was included in the chattel mortgage. Preston went to .Detroit before the bill was filed, and caused this suit to be commenced; himself signing the bill of complaint as agent, and also the verification to it. Preston died April 27, 1895. May 27, 1895, the rubber company, by advice of its attorney, thinking to obtain some benefit by a judgment at law, brought suit in the circuit court for the county of Wayne, and on July 17, 1895, recovered a judgment in the sum of $18,669.82,—the full amount of its claim. Early in January, 1896, an officer of the company in New York wrote to its agent in Chicago to hunt up the correspondence between Preston and Snedicor. The agent did so, and on January 20, 1896, the correspondence was received at the New York office. Before the petition was filed, these goods, with the others, had been sold by the receiver. The rule of law, as stated in *Black* v. *Miller*, 75 Mich. 323, is conceded by the learned counsel; but he insists that these proceedings were not taken by the rubber company with knowledge of the above provision of the contract as to the title, and that, therefore, it is not precluded from asserting its claim. The knowledge and acts of Preston bind the company. It is not to be inferred from the fact that Preston was a man of large business, and that he was in poor health at the time the chattel mortgage.was given and· the chancery suit commenced, that he was not aware of the terms of the contract. The taking of the chattel mortgage, the bringing of suit in chancery, and of the suit at law, are inconsistent with any other theory than that the title had passed. The creditor, the debtor, other creditors, and the receiver had acted upon the theory that the title had passed. The written contracts were on file

in the company's office, and there is no evidence to show that Preston was not familiar with the terms of sale. The rubber company was also fully informed of the terms of the sale, made by the receiver. If, however, it were true that the company had no actual knowledge of the precise terms of the sale made by its agent, it is in evidence that it did know that Preston did sometimes make consignment of goods precisely as is now claimed. It was therefore its duty to act promptly in ascertaining what the contract was. The correspondence was under its control, and could have been had by writing for it. Its delay was not excused. Preston elected to treat the transaction as a sale, and his election bound his principal. We think the case is ruled by *Thomas* v. *Watt*, 104 Mich. 201, and cases there cited.

2. It is claimed that the taking of security by the deed, the declaration, and the assignment of the accounts was in fraud of other creditors. There is no testimony to show that Snedicor or the bank acted in bad faith, or with any design or thought of defrauding his future creditors. The one gave and the other received securities such as the law authorizes. The law does not provide for recording or filing an assignment of accounts. Such an assignment or security is therefore valid when made *bona fide* and without intent to defraud. *Preston Nat. Bank of Detroit* v. *George T. Smith Middlings Purifier Co.*, 84 Mich. 364. Even if there had been no declaration of trust, the deed was in fact a mortgage, and could have been enforced as such without the declaration. *Jeffery* v. *Hursh*, 58 Mich. 257. The transaction was not a fraud in law. Fraud will not be inferred from the mere fact that the terms of the security were not stated in the deed, or that the declaration of trust was not recorded.

3. It is unnecessary to determine whether the chattel mortgage covers any more than the $39,000. The circuit judge correctly held that the chattel mortgage was distinctly made subject to the prior assignment of the

accounts, and that a larger amount than the surplus in the hands of the receiver was realized from the collectible accounts. The bank therefore had a prior valid lien, and the amount in the hands of the receiver was properly ordered paid to the bank.

The decree is affirmed, with costs.

The other Justices concurred.